**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

REPUBLICAN NATIONAL COMMITTEE,
310 First Street, SE
Washington, D.C. 20003,

      Plaintiff,

      v.

UNITED STATES DEPARTMENT OF STATE,
320 21st Street, NW
Washington, D.C. 20451

      Defendant.

Civil Action No. _____

## COMPLAINT

This November, the people of the United States will decide who will serve as their next President. They should do so with access to as much information as possible about the candidates' fitness for this Nation's highest office.

To that end, the Republican National Committee (RNC) files this suit under the Freedom of Information Act (FOIA) seeking records relating to former Secretary of State, and leading candidate to become the Democratic Party's presidential nominee, Hillary Clinton's tenure at the State Department. For over a year now, rarely a day has passed without some mention in the news of Secretary Clinton's use of a private email server. *See, e.g.*, Marc A. Thiessen, *Clinton's Email Excuses are Falling Apart*, Washington Post (Jan. 25, 2016); Editorial Board, *The Voters Need Answers about the Clinton Emails*, Washington Post (Feb. 7, 2016); Rosalind S. Helderman and Tom Hamburger, *Clinton, on Her Private Server, Wrote 104 Emails the Government Says Are Classified*, Washington Post (Mar. 5, 2016). What began as a story about an email server has now expanded to include questions concerning the State Department's relationships with private Clinton organizations (like the Clinton Foundation) during Secretary Clinton's tenure. *See, e.g.*, Byron Tau & Rebecca Ballhaus, *Subpoena Said to be Issued to the Clinton Foundation*, Wall St.

J. (Feb. 11, 2016). Those allegations raise questions about Secretary Clinton's fitness to serve as President—and the American people deserve to know the truth behind them before the primary season runs its course, before the Democratic Convention begins on July 25, 2016, and certainly before the general election on November 8, 2016.

Last October, the RNC requested records under FOIA relating to select State Department staffers who have been linked to Secretary Clinton's evolving email saga. Nearly five months later, the State Department has not made a determination about those requests (as FOIA requires), let alone provided any responsive records. With the presidential election fast approaching, the delay must end.

The very purpose of FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold governors" like Secretary Clinton "accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1976). Yet the State Department threatens to deprive the American public of critical information needed to make an informed vote in 2016. That cannot happen. This Court should require the State Department to meet its statutory disclosure obligations—and to do so with haste.

## PARTIES

1. The Republican National Committee (the Plaintiff) is an unincorporated political committee with headquarters in Washington, D.C.

2. The United States Department of State (the Defendant) is an agency within the meaning of 5 U.S.C. §552(f)(1) that has possession, custody, and control of records that the RNC seeks under FOIA.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

4. Venue is proper in this Court under 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B) because the State Department, an agency of the United States Government, is headquartered and resides in this District.

5. The RNC is deemed to have exhausted all its administrative remedies under 5 U.S.C. § 552(a)(6)(C) because the State Department has failed to make a determination and provide notification of that determination within the statutorily mandated time limit of twenty working days after receiving the requests. 5 U.S.C. § 552(a)(6)(A)(i).

## BACKGROUND

6. FOIA "focuses on the citizens' right to be informed about what their government is up to" by requiring the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). "[D]isclosure, not secrecy, is the dominant objective." *Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks omitted). Indeed, one of President Obama's first acts as President was to state his administration's approach to FOIA, instructing agency heads that "the Freedom of Information Act should be administered with a clear presumption: In the face of doubt, openness prevails . . . . Nondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve." Presidential Memorandum, Freedom of Information Act, 74 Fed. Reg. 4,681, 4,683 (Jan. 21, 2009).

7. In late March 2013, a hacker known as "Guccifer" infiltrated the email account of former White House advisor Sidney Blumenthal. Among the emails unearthed in the hack was a series of memos about the Benghazi terrorist attacks that were sent to then-Secretary Clinton's private *clintonemail.com* email address. It was later discovered that Secretary Clinton exchanged more than a hundred emails with Blumenthal—who had no security clearance at the time—some containing information that has since been designated classified. Josh Gerstein, *Clinton's Emails from Blumenthal Spark Tension*, Politico (Oct. 22, 2015).

8. The public's interest in Secretary Clinton's use of a private email server to send and receive classified material intensified two years later. On March 2, 2015, the New York Times reported that Secretary Clinton's exchange with Blumenthal was not an outlier: Secretary Clinton had used her personal email account exclusively to conduct government business during her tenure

as Secretary of State. *See* Michael S. Schmidt, *Clinton Used Personal Email at State Dept.*, N.Y. Times, Mar. 3, 2015, at A1. Secretary Clinton did not even have an assigned government email address, and she reportedly did nothing to preserve her emails on government servers, even though the Federal Records Act required her to do so. *Id.*

9. The New York Times article raised questions about Secretary Clinton's mishandling of government secrets. To date, the State Department has retroactively marked as classified more than 2,000 emails on Secretary Clinton's private server; that includes marking some at the government's most restricted level. Josh Gerstein, *State Dept. Marks Three More Clinton Emails at "Secret" Level*, Politico (Feb. 13, 2016). The FBI is now reportedly investigating Secretary Clinton's mishandling of classified material for potential criminal violations. *See* Steven Lee Myers, *Unclassified Emails May Have Consequences for a Key Deputy*, N.Y. Times, Feb. 27, 2016, at A13; *see also* Michael B. Mukasey, *Clinton's Emails: A Criminal Charge Is Justified*, Wall St. J. (Jan. 21, 2016).

10. Former Secretary Clinton is seeking, and is considered the leading candidate to secure, the Democratic Party's presidential nomination. Clinton's actions while Secretary of State—and the actions of those senior staffers with whom she worked most closely and supervised—are manifestly relevant to whether she is fit to lead this country. Public scrutiny of her tenure at the State Department is "a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004); *see also Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002) ("Democracies die behind closed doors.").

11. That scrutiny must happen before the American people cast their ballots. As a general matter, "[s]tale information is of little value." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). In an election year, stale information is of no value at all. That is reason all the more for this Court to order expedited disclosures to the RNC's FOIA requests.

## THE RNC'S REQUESTS

12. On October 29, 2015, the RNC made five separate FOIA requests for information relating to Secretary Clinton's tenure at the State Department. Through the first four of those

4

requests, the RNC seeks email communications sent to or by select Clinton staffers or State Department personnel who have been publicly linked to Secretary Clinton's mishandling of classified government information. Those individuals include Cheryl Mills, Jacob Sullivan, Patrick Kennedy, and Bryan Pagliano.

13.     Cheryl Mills is a longtime Clinton aide who served as Secretary Clinton's Chief of Staff at the State Department. A substantial number of now-classified emails were reportedly sent to or from Mills's government email account. S.A. Miller & Stephen Dinan, *Hillary Clinton, Inner Circle Responsible for Most Classified Emails*, Washington Times (Sept. 3, 2015). Mills is also reported to have shared classified information with the Clinton Foundation. Rachel Blade, *Mills Shared Now-Classified Info with Clinton Foundation*, Politico (Oct. 6, 2015). Mills has been linked to previously mishandled FOIA responses that failed to disclose information about Secretary Clinton's private email server. Carol D. Leonnig & Rosalind S. Helderman, *State Department Gave "Inaccurate" Answer on Clinton Email Use, Review Says*, Washington Post (Jan. 6, 2016).

14.     Jacob Sullivan, former Director of Policy Planning and Deputy Chief of Staff at the State Department, handled some of the most pressing policies and international crises during Secretary Clinton's tenure at the State Department. *See* Steven Lee Myers, *Unclassified Emails May Have Consequences for a Key Deputy*, N.Y. Times, Feb. 27, 2016, at A13. Regarded as the "principal conduit" to Secretary Clinton, Sullivan is linked to more classified emails than any other Clinton staffer. In fact, he reportedly wrote many of the emails that have since been designated top secret. *Id.*; S.A. Miller & Stephen Dinan, *Hillary Clinton, Inner Circle Responsible for Most Classified Emails*, Washington Times, (Sept. 3, 2015). Sullivan now serves as the foreign policy advisor for Secretary Clinton's presidential campaign. *Id.*

15.     Patrick Kennedy is the State Department's Undersecretary for Management, a role that he also held during Clinton's tenure as Secretary of State. From the time that Secretary Clinton took office in the State Department, Kennedy reportedly knew about Clinton's "stand-alone [email] network" (Spencer S. Hsu, *U.S. Judge Orders Discovery to go forward over Clinton's Private Email System*, Washington Post (Feb. 23, 2016)) and may have even approved the setup.

5

Josh Gerstein, *Who Approved Clinton's Homebrew Server?*, Politico (Oct. 6, 2015). Kennedy is reportedly coordinating the State Department's response to both the Benghazi and the Clinton email investigations. Kimberly A. Strassel, *The Department of Hillary*, Wall St. J. (Sept. 3, 2015).

16.     Bryan Pagliano served as the technology director for Secretary Clinton's 2008 presidential campaign before joining Clinton's staff at the State Department. Secretary Clinton reportedly paid Pagliano out of her own pocket to set up and maintain the now-infamous private server in her Chappaqua, New York home. Rosalind S. Helderman & Carol D. Leonnig, *Clinton's Personally Paid State Department Staffer to Maintain Server*, Washington Post (Sept. 5, 2015). Pagliano, who did not disclose his off-the-book earnings to the State Department, invoked the Fifth Amendment when summoned to testify about Secretary Clinton's private server. Carol D. Leonnig, *Lawmakers Require Ex-Clinton Staffer Who Worked on E-mail Server to Appear*, Washington Post (Sept. 9, 2015). He was recently granted immunity for his cooperation in the criminal investigation. Adam Goldman, *Justice Dept. Grants Immunity to Staffer who set up Clinton Email Server*, Washington Post (Mar. 2, 2016).

17.     For each of those four individuals—Mills, Sullivan, Kennedy, and Pagliano—the RNC requested "[a]ny and all e-mails sent to, or sent by" them using "official State Department account(s)." Inasmuch as those individuals, like Secretary Clinton, sent or received work emails on "private e-mail account(s)," the RNC requested those messages as well. The requests for Mills, Sullivan, and Kennedy cover January 21, 2009 to February 1, 2013—Clinton's tenure as Secretary of State. The request for Pagliano runs from May 1, 2009 to February 1, 2013. True and correct copies of the RNC's requests for Mills, Sullivan, Kennedy, and Pagliano are attached as Exhibits 1 to 4.

18.     Through its fifth request, the RNC sought "[a]ny and all text messages or BlackBerry Messenger messages (BBMs) sent to, or sent by, Hillary Clinton" using official government accounts and devices, as well as all "work product sent or received on any private account(s) and/or devices used by Ms. Clinton to conduct official government business." That request covers May 1, 2009 to February 1, 2013. A true and correct copy of the RNC's FOIA

request for Secretary Clinton's text messages and BlackBerry Messenger messages is attached as Exhibit 5.

19. On November 9, 2015, the State Department sent separate letters acknowledging receipt of the RNC's five FOIA requests and assigning Case Control Numbers F-2015-16081 through F-2015-16085. But then, silence. The State Department never disclosed any of the requested materials nor explained why it cannot comply with its statutory obligations. *See Milner v. Dep't of Navy*, 562 U.S. 562, 571 (2011) ("We have often noted 'the Act's goal of broad disclosure' and insisted that the exemptions be 'given a narrow compass.'"). True and correct copies of the State Department's acknowledgement letters are compiled in Exhibit 6.

20. Because the State Department failed to communicate its "determination" on the RNC's FOIA requests within twenty working days (5 U.S.C. § 552(a)(6)(A)), the RNC has constructively exhausted its administrative remedies and may proceed directly to this Court. *See Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 182 (D.C. Cir. 2013) (a requestor exhausts its remedies unless, within the relevant time period, the agency "inform[s] the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions"); *id.* at 189-90 ("[I]f the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court.").

21. Time is of the essence. The information that the RNC seeks bears on Secretary Clinton's fitness to serve as the next President of the United States and will have no value unless it makes its way into the public's hands before the election. The RNC and the public will suffer irreparable harm if the requested information does not come to light before then.

22. The State Department's burden to produce the requested documents is minimal when compared to the American people's substantial interest in vetting a presidential nominee. Indeed, the burden on the State Department should be minimal even when considered alone: The

agency has fielded FOIA requests relating to Secretary Clinton's email for the last year, so it should already be in a position to disclose many of the communications that the RNC seeks.

23. Finally, no "exceptional circumstances" exist that would justify giving the State Department additional time to respond to the RNC's FOIA requests. 5 U.S.C. § 552(a)(6)(C)(ii). If anything, with the election looming, there is every reason to order the State Department to comply with the RNC's FOIA requests at double speed.

## COUNT I: VIOLATION OF FOIA (5 U.S.C. § 552)

24. The State Department is unlawfully withholding records that the RNC requested under 5 U.S.C. § 552.

25. The State Department's failure to disclose the requested records has irreparably injured the RNC and will continue to do so until the State Department discloses the records.

## PRAYER FOR RELIEF

The RNC requests the following:

1. Expedited consideration under 28 U.S.C. § 1657;

2. A declaratory judgment that the State Department has improperly withheld the requested records under FOIA;

3. A finding that the State Department's failure to comply with its obligations under FOIA has caused the RNC irreparable harm;

4. An order directing the State Department to respond and produce the requested documents by July 1, 2016, in time for the Democratic National Convention;

5. Costs and reasonable attorneys' fees under 5 U.S.C. § 552(a)(4)(E);

6. Any other relief that the Court deems appropriate.

Dated March 9, 2016.

_____
Laura Sierra (D.C. Bar. No. 984944)
laura.sierra@alston.com
Edward T. Kang (D.C. Bar No. 1011251)
(*application for admission pending*)
edward.kang@alston.com
Kelley Barnaby (D.C. Bar. No. 998757)
kelley.barnaby@alston.com
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Telephone: (202) 239-3300

John R. Phillippe
jphillippe@gop.com
REPUBLICAN NATIONAL COMMITTEE
310 First Street, SE
Washington, DC 20003
Telephone: (202) 863-8638

Brian D. Boone (D.C. Bar No. 987633)
(*application for admission pending*)
brian.boone@alston.com
D. Andrew Hatchett
(*application for admission pending*)
andrew.hatchett@alston.com
ALSTON & BIRD LLP
101 S. Tryon Street
Charlotte, NC 28280
Telephone: (704) 444-1000

*Counsel for Plaintiff Republican National Committee*