## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

REPUBLICAN NATIONAL COMMITTEE,

Plaintiff,

v.

U.S. DEPARTMENT OF STATE,

Defendants.

Case No. 1:16-CV-461 (ABJ)

## THE REPUBLICAN NATIONAL COMMITTEE'S
## CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff, the Republican National Committee (RNC), moves for summary judgment under Federal Rule of Civil Procedure 56. The grounds for this motion are set out in the RNC's accompanying memorandum.

Dated: June 20, 2016

*/s/ Edward T. Kang*
Edward T. Kang (D.C. Bar 1011251)
edward.kang@alston.com
Kelley Barnaby (D.C. Bar. No. 998757)
kelley.barnaby@alston.com
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Telephone: (202) 239-3300

*/s/ Brian D. Boone*
Brian D. Boone (D.C. Bar No. 987633)
brian.boone@alston.com
D. Andrew Hatchett (D.D.C. Bar No. GA0004)
andrew.hatchett@alston.com
ALSTON & BIRD LLP
101 S. Tryon Street
Charlotte, NC 28280
Telephone: (704) 444-1000

John R. Phillippe
jphillippe@gop.com
REPUBLICAN NATIONAL COMMITTEE
310 First Street, SE
Washington, DC 20003
Telephone: (202) 863-8638

*Counsel for Plaintiff Republican National Committee*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, | |
| Plaintiff, | |
| v. | Case No. 1:16-CV-461 (ABJ) |
| U.S. DEPARTMENT OF STATE, | |
| Defendants. | |

<u>**MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF THE REPUBLICAN NATIONAL COMMITTEE'S CROSS-MOTION FOR SUMMARY JUDGMENT**</u>

Edward T. Kang (D.C. Bar 1011251)
edward.kang@alston.com
Kelley Barnaby (D.C. Bar. No. 998757)
kelley.barnaby@alston.com
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Telephone: (202) 239-3300

Brian D. Boone (D.C. Bar No. 987633)
brian.boone@alston.com
D. Andrew Hatchett (D.D.C. Bar No. GA0004)
andrew.hatchett@alston.com
ALSTON & BIRD LLP
101 S. Tryon Street
Charlotte, NC 28280
Telephone: (704) 444-1000

John R. Phillippe
jphillippe@gop.com
REPUBLICAN NATIONAL COMMITTEE
310 First Street, SE
Washington, DC 20003
Telephone: (202) 863-8638

*Counsel for Plaintiff Republican National Committee*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 7

STANDARD OF REVIEW ............................................................................................... 11

ARGUMENT .................................................................................................................... 12

    I.      This Court must independently evaluate each of the RNC's three
           outstanding FOIA requests. ................................................................... 13

    II.     The RNC's remaining requests are reasonable. ...................................... 15

    III.    The State Department's supporting declaration does not support the
           Government's claim that the RNC's requests are unduly burdensome. ............... 18

CONCLUSION ................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Civil Liberties Union v. U.S. Dep't of Justice,*
   655 F.3d 1 (D.C. Cir. 2011) ................................................................................12

*Am. Federation of Gov't Employees, Local 2782 (AFGE) v. U.S. Dep't of Commerce,*
   907 F.2d 203 (D.C. Cir. 1990) .......................................................................16, 17

*Banks v. Dep't of Justice,*
   605 F. Supp. 2d 131 (D.D.C. 2009) ..................................................................4, 14

*Charles v. Office of Armed Forces Med. Exam'r,*
   730 F. Supp. 2d 205 (D.D.C. 2010) ....................................................................11

*Cuban v. S.E.C.,*
   795 F. Supp. 2d 43 (D.D.C. 2011) ................................................................19, 21

*Davenport v. C.I.R.,*
   No. 85 C 8612, 1986 WL 8965 (N.D. Ill. Aug. 13, 1986) ....................................20

*Dep't of Air Force v. Rose,*
   425 U.S. 352 (1976) ......................................................................................12, 13

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
   532 U.S. 1 (2001) ..............................................................................................11

*Gulf Oil Corp. v. Brock,*
   778 F.2d 834 (D.C. Cir. 1985) ...........................................................................14

*Hainey v. U.S. Dep't of the Interior,*
   925 F. Supp. 2d 34 (D.D.C. 2013) ......................................................................17

*Inst. for Policy Studies v. C.I.A.,*
   885 F. Supp. 2d 120 (D.D.C. 2012) ...............................................................11, 12

*Int'l Counsel Bureau v. U.S. Dep't of Defense,*
   723 F. Supp. 2d 54 (D.D.C. 2010) ......................................................................17

*King v. U.S. Dep't of Justice,*
   830 F.2d 210 (D.C. Cir. 1987) ...............................................................13, 19, 20

*Milner v. Dep't of Navy,*
   562 U.S. 562 (2011) .....................................................................................11, 13

*N.L.R.B. v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978)............................................................................................6, 21

*Nat'l Archives & Records Admin. v. Favish*,
    541 U.S. 157 (2004)............................................................................................6, 21

*Nation Magazine, Washington Bureau v. U.S. Customs Serv.*,
    71 F.3d 885 (D.C. Cir. 1995)......................................................................12, 19, 20

*Payne Enters., Inc. v. United States*,
    837 F.2d 486 (D.C. Cir. 1988).............................................................................6

*Pinson v. U.S. Dep't of Justice*,
    80 F. Supp. 3d 211 (D.D.C. 2015)....................................................................12, 15

*U.S. Dep't of Justice v. Tax Analysts*,
    492 U.S. 136 (1989)...........................................................................................11

*Vietnam Veterans of America Connecticut Greater Hartford Chapter 120 v.*
    *Department of Homeland Security*,
    8 F. Supp. 3d 188 (D. Conn. 2014).....................................................................16

*Weisberg v. U.S. Dep't of Justice*,
    627 F.2d 365 (D.C. Cir. 1980)........................................................................19, 20

*Wolf v. C.I.A.*,
    569 F. Supp. 2d 1 (D.D.C. 2008).........................................................................17

## STATUTES

5 U.S.C. § 552(a)(3)(A) ...............................................................................4, 13, 17, 18

5 U.S.C. § 552(a)(3)(D) .............................................................................................13

5 U.S.C. § 552(d) ......................................................................................................13

## OTHER AUTHORITIES

Adam Goldman, *Justice Dept. Grants Immunity to Staffer Who Set Up Clinton*
    *Email Server*, Wash. Post (Mar. 2, 2016) ...........................................................2

Byron Tau, *Estimate of 75 Years to Release Clinton Aides' Email 'Not an*
    *Outlandish Estimation,'* Wall St. J. Blog (June 7, 2016),
    http://blogs.wsj.com/washwire/2016/06/07/estimate-of-75-years-to-process-
    clinton-aides-email-not-an-outlandish-estimation. ...............................................13

Carol D. Leonnig & Rosalind S. Helderman, *State Department Gave*
    *"Inaccurate" Answer on Clinton Email Use, Review Says*, Wash. Post (Jan. 6,
    2016) ....................................................................................................................1

Chris Egan & Glen Homer, *Achieve Savings By Predicting and Controlling Total Discovery Cost*, The Metropolitan Corporate Counsel (Dec. 1, 2008)....................................11

David Degnan, *Accounting for the Costs of Electronic Discovery*, 12 Minn. J.L. Sci. & Tech. 151 (2011)....................................................................................................4

Editorial Board, *Clinton's Inexcusable, Willful Disregard for the Rules*, Wash. Post (May 25, 2016)........................................................................................................3

Editorial Board, *Hillary Clinton Broke the Rules: Our View*, USA Today (June 1, 2016) ....................................................................................................................................3

Eric Lichtblau & Matt Flegenheimer, *Hillary Clinton Email Inquiry Won't Be Rushed, F.B.I. Chief Says*, N.Y. ...............................................................................3

Hillary Rodham Clinton, *Hard Choices* (2015)....................................................................18

Josh Gerstein, *State Department Claims It Can't Find Any Clinton Texts or Email File for IT Aide*, Politico (May 9, 2016) .........................................................................9

Josh Gerstein & Rachael Bade, *State Dept. Releases Final Haul of Clinton Emails*, Politico (Feb. 29, 2016), http://www.politico.com/story/2016/02/hillary-clinton-emails-top-secret-219988.............................................................................................................................17

Peter Boberg & Andrew Dick, *Findings From the Second Request Compliance Burden Survey*, The Threshold, Volume XIV, No. 3, A.B.A. Section of Antitrust Law (Summer 2014) .......................................................................................5

Spencer S. Hsu, *Clinton Staffer Who Set Up Private Email Server Invokes 5th Amendment In Case*, Wash. Post (June 1, 2016) ........................................................2

Spencer S. Hsu, *U.S. Judge Delays Deposition, Directs Clinton Aide to Detail Immunity Deal in Email Probe*, Wash. Post (June 3, 2016) ......................................2

U.S. Dep't of Justice, *Celebrating James Madison and the Freedom of Information Act* (Mar. 13, 2008).............................................................................12

U.S. Dep't of State Office of Inspector General, *Office of the Secretary: Evaluation of Email Records Management and Cybersecurity Requirements* (May 2016).......................................................................................................................1

## INTRODUCTION

Here is some of what has transpired over the last month:

1.      On May 25, 2016, the State Department's Office of Inspector General released a report about its investigation into information-handling practices at the State Department. The Inspector General found that, among other things, Secretary Clinton violated numerous departmental policies (all promulgated to ensure compliance with federal law) by using a private email server to conduct State Department business (*see* U.S. Dep't of State Office of Inspector General, *Office of the Secretary: Evaluation of Email Records Management and Cybersecurity Requirements* 23–25 (May 2016)[1]); Secretary Clinton and certain of her staffers refused to sit for interviews with the Inspector General's Office (*id.* at 2 n.7); Secretary Clinton and certain of her staffers (including Mr. Pagliano) knew that hackers had repeatedly tried to access her private server (*id.* at 40); and it appears that Secretary Clinton and her staffers used a private email server in part to avoid FOIA's public-disclosure requirements. *Id.* at 38–39.

2.      At her May 27, 2016 deposition in a separate FOIA case, Cheryl Mills (Clinton's former Chief of Staff) refused to answer certain questions relating to Clinton's private email server. *See generally* Transcript of Cheryl Mills May 27, 2016 Dep.; Byron Tau, *Clinton Aide Declines to Answer Questions About Email Server Setup* Wall St. J. (May 31, 2016).[2] This occurred after an earlier article reported that Ms. Mills's mishandling of FOIA responses resulted in the State Department's failing to disclose the private email server. *See* Carol D. Leonnig & Rosalind S. Helderman, *State Department Gave "Inaccurate" Answer on Clinton Email Use, Review Says*, Wash. Post (Jan. 6, 2016).

3.      On June 1, 2016, Bryan Pagliano—through his legal counsel—announced that he would plead the Fifth Amendment at his scheduled June 6 deposition in a separate FOIA case. *See* Spencer S. Hsu, *Clinton Staffer Who Set Up Private Email Server Invokes 5th Amendment In Case*,

---

[1] https://oig.state.gov/system/files/esp-16-03.pdf.

[2] http://www.wsj.com/articles/clinton-aide-declines-to-answer-questions-about-email-server-setup-1464734286.

Wash. Post (June 1, 2016).[3] The announcement came as a surprise because Mr. Pagliano had already accepted an immunity deal with the FBI. *See* Adam Goldman, *Justice Dept. Grants Immunity to Staffer Who Set Up Clinton Email Server*, Wash. Post (Mar. 2, 2016).[4]

4.      On June 3, 2016, U.S. District Judge Emmet Sullivan postponed Mr. Pagliano's June 6 deposition and ordered Mr. Pagliano's counsel to file a brief disclosing the details of Mr. Pagliano's immunity deal with the Government and explaining why Mr. Pagliano is entitled to invoke the Fifth Amendment in the civil FOIA litigation. *See* Spencer S. Hsu, *U.S. Judge Delays Deposition, Directs Clinton Aide to Detail Immunity Deal in Email Probe*, Wash. Post (June 3, 2016);[5] June 3 Minute Order, *Judicial Watch, Inc. v. U.S. Dep't of State*, No. 13-cv-1363 (D.D.C.).

5.      On June 7, 2016, Mr. Pagliano filed his immunity agreement with the Court, asking the Court to keep it under seal. *See Judicial Watch, Inc. v. U.S. Dep't of State*, No. 13-cv-1363 (D.D.C.), Dkt. No. 88. He also filed a brief contending that he is entitled to invoke the Fifth Amendment in the civil FOIA litigation because his "prospective deposition will inevitably cover matters that might furnish a link in the chain of evidence needed to prosecute." *Judicial Watch, Inc. v. U.S. Dep't of State*, No. 13-cv-1363 (D.D.C.), Dkt. No. 89 (internal quotation marks omitted).

6.      On June 14, 2016, Judge Sullivan ordered Mr. Pagliano's deposition to go forward. Judge Sullivan also denied Mr. Pagliano's motion to prevent Judicial Watch (the FOIA plaintiff) from videotaping the deposition. The Court ordered the parties to keep any deposition video under

---

[3] https://www.washingtonpost.com/local/crime/clinton-staffer-who-set-up-private-email-server-invokes-5th-amendment-in-case/2016/06/01/4d33cd00-2842-11e6-a3c4-0724e8e24f3f_story.html.

[4] https://www.washingtonpost.com/world/national-security/in-clinton-email-investigation-justice-department-grants-immunity-to-former-state-department-staffer/2016/03/02/e421e39e-e0a0-11e5-9c36-e1902f6b6571_story.html.

[5] https://www.washingtonpost.com/local/crime/us-judge-delays-deposition-directs-clinton-aide-to-detail-immunity-deal-in-email-probe/2016/06/03/9c8a9edc-29a6-11e6-a3c4-0724e8e24f3f_story.html.

seal until further notice. *See Judicial Watch, Inc. v. U.S. Dep't of State*, No. 13-cv-1363 (D.D.C.), June 14, 2016 minute order.

7.      The FBI continues to investigate whether Secretary Clinton or her staffers violated federal law by using a private email server to conduct State Department business. *See* Eric Lichtblau & Matt Flegenheimer, *Hillary Clinton Email Inquiry Won't Be Rushed, F.B.I. Chief Says*, N.Y. Times (May 11, 2016).[6]

Those most-recent revelations have reverberated through the press, raising even more questions about Secretary Clinton's tenure at the State Department and what it says about her fitness to serve as President of the United States. From the Washington Post's Editorial Board: "Ms. Clinton had plenty of warnings to use official government communications methods, so as to make sure that her records were properly preserved and to minimize cybersecurity risks. She ignored them." Editorial Board, *Clinton's Inexcusable, Willful Disregard for the Rules*, Wash. Post (May 25, 2016).[7] And from USA Today's Editorial Board: "[A] new report by State's inspector general makes clear that within two years, Clinton's bad decision had turned into something far worse: a threat to national security, one that she repeatedly ignored despite multiple warnings." Editorial Board, *Hillary Clinton Broke the Rules: Our View*, USA Today (June 1, 2016).[8]

* * *

It is against that backdrop that the State Department now moves for summary judgment against the RNC. Election Day is fast approaching, but the Government seeks to shield from public view facts about Secretary Clinton's actions during her tenure at the State Department—or at least to delay their disclosure until after the election. The Government does not claim any exemption from FOIA's disclosure requirements; on the contrary, it has acknowledged that only a small

---

[6] http://www.nytimes.com/2016/05/12/us/politics/hillary-clinton-emails-fbi-james-comey.html?_r=0.

[7] https://www.washingtonpost.com/opinions/clintons-inexcusable-willful-disregard-for-the-rules/2016/05/25/0089e942-22ae-11e6-9e7f-57890b612299_story.html.

[8] http://www.usatoday.com/story/opinion/2016/05/30/hillary-clinton-email-server-inspector-general-editorials-debates/85159948.

fraction of the documents contain classified information, and it has never asserted that any particular document is exempt from disclosure. *See* Republican National Committee's Supplemental Statement of Material Facts ("RNC's SMF") ¶ 9; June 20, 2016 Declaration of Edward T. Kang ("Kang Decl.") ¶ 7 & Ex. C. Instead, the State Department argues that the RNC's five separate FOIA requests collectively pose an unreasonable burden on the Agency because they encompass hundreds of thousands of pages of documents. *See* Def.'s Br. 4, 8. That is too heavy a load, the Government contends, because the State Department can review only about 500 pages a month (*id.* at 4)—or about as many pages as a typical contract attorney reviews in a day. *See* David Degnan, *Accounting for the Costs of Electronic Discovery*, 12 Minn. J.L. Sci. & Tech. 151, 165 (2011) ("Industry standards suggest that document reviewers can read, understand, and mark 50 *documents* [not pages] per hour or 400 *documents* per day." (emphasis added)).

There are at least three problems with the Government's argument. First, this Court may not combine the RNC's separate FOIA requests to judge their reasonableness in the aggregate. It must judge the reasonableness of each request separately. *See* 5 U.S.C. § 552(a)(3)(A) ("each agency, upon any *request* for records . . . ." (emphasis added)); *id.* § 552(a)(3)(D) (government must search for documents "responsive to *a request*") (emphasis added). The RNC could have filed a separate lawsuit for each FOIA request that the State Department ignored, but it instead chose to save everyone time and money by consolidating several requests in a single complaint. The requests are separate and must be evaluated as such. The Government cannot evade its statutory disclosure obligations by lumping distinct FOIA requests together. *See Banks v. Dep't of Justice*, 605 F. Supp. 2d 131, 142 (D.D.C. 2009) ("If the requests are indeed separate," then analysis of one will "have no impact on the others.").

Second, the Government's argument strains credulity. Whether judged separately or collectively, the RNC's FOIA requests are reasonable. Each request "reasonably describes" the records sought (5 U.S.C. § 552(a)(3)(A)), specifying the subject matter and date range. And each yields a manageable universe of documents (the Government's arguments notwithstanding). As narrowed during this litigation, the RNC's requests seek a subset of emails from just three

custodians: Patrick Kennedy (11,000 emails), Cheryl Mills (64,000 emails), and Bryan Pagliano (the State Department has not yet identified how many emails are responsive to the Pagliano request). *See* RNC's SMF ¶ 14; Kang Decl. ¶ 14; Stein Decl. (Dkt. No. 19-2) ¶¶ 19–20; Def.'s Statement of Material Facts ("Def.'s SMF") (Dkt. No. 19) ¶ 30.

The Government's argument that a document production totaling just under 20,000 pages for one custodian (Mr. Kennedy) and just over one-hundred thousand pages for another (Ms. Mills) is unreasonably burdensome is an argument of convenience and nothing more. We do not live in the era of quill pens or stagecoaches; just like private parties, the Government has access to sophisticated electronic search tools that make it possible to search large document sets with relative ease. Indeed, when the shoe is on the other foot, the Government does not hesitate to demand production of millions upon millions of documents. In the merger context, for instance, the Government's discovery requests on average require private parties to review "47 GB of emails and other electronic documents using review tools," which translates to around "4.8 million pages (including attachments)." Peter Boberg & Andrew Dick, *Findings From the Second Request Compliance Burden Survey*, The Threshold, Volume XIV, No. 3, A.B.A. Section of Antitrust Law at 31–32 (Summer 2014).[9] And those private parties don't have decades to produce the documents—which is how long the Government claims that it would take it to produce the documents in this case. Def.'s Br. 2. On average, private parties in merger review have about 5.9 months to meet the Government's demands for documents, which is about as long as this lawsuit has been on the books. *Id.* at 28. That is one example from one corner of the Government. No doubt there are others.

If a private party in litigation with the Government argued that producing 19,000 pages (the size of the narrowed request for Patrick Kennedy (*see* Stein Decl. ¶ 19)) or even 103,000 pages (the size of the narrowed request for Cheryl Mills) posed an unreasonable burden, the Government would reject that argument out of hand—while pressing hard to force disclosure. That the

---

[9] http://www.crai.com/sites/default/files/publications/Threshold-Summer-2014-Issue.pdf.

Government argues for a different standard here exposes the Government's unreasonable-burden arguments for what they are: part of a not-so-subtle strategy to delay.

That strategy has become more palpable in recent days. At a June 7, 2016 press briefing, the State Department's deputy spokesman, Mark Toner, could not help but grin when asked about the Agency's claim that it would take up to 75 years to respond to the RNC requests at issue in this case. Toner admitted that 75 years is an "incredible number." The video of Toner's response is revealing. *See* video of Toner's response, https://www.youtube.com/watch?v=yPDjpi_IKc8.[10]

Third, the Government's argument, if accepted, would make it far too easy for government agencies to avoid FOIA's disclosure requirements. In enacting the statute, Congress wanted to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Those values are always important, but they reach their apex in the days and months leading up to a presidential election. Secretary Clinton is now the Democratic Party's presumptive nominee for President. How she carried out her duties as a Cabinet Secretary, and the possibility that she and her top aides flouted State Department policies—potentially exposing sensitive government information to hackers or jeopardizing American lives—is germane to the public's assessment of her candidacy to lead this Country. Public scrutiny of her tenure at the State Department is "a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

That scrutiny must take place before the American people cast their ballots. As a general matter, "[s]tale information is of little value." *Payne Enters., Inc. v. United States*, 837 F.2d 486,

---

[10] The RNC highlights the Government's 75-years estimate because it has caught the press's skeptical eye. In reality, the Government's true years estimate is hard to pin down because many of the figures in the Government's brief take into account non-responsive records or withdrawn requests. At last count, the Government appears to claim that it will take more than 17 years to review the Mills emails, more than 3 years to review the Kennedy emails, and an astonishing 104 years to review the collection of Mr. Pagliano's emails (many of which may not even be responsive to the RNC's request). In any event, the Government contends that processing the responsive records would take "decades," an assertion that is itself incredible. Def.'s Br. 2.

494 (D.C. Cir. 1988). In an election year, stale information is of no value at all. If there were ever a case for enforcing the public-disclosure laws that Congress enacted, it is this one. The American people should not have to wait decades to learn the truth about Secretary Clinton's tenure at the State Department. They are entitled to know the truth before voting in November.

## BACKGROUND

Last October, the RNC submitted four separate FOIA requests seeking emails sent to or by select State Department staffers—Cheryl Mills, Jacob Sullivan, Patrick Kennedy, and Bryan Pagliano—each of whom has been linked to the Clinton email saga. Compl. Exs. 1-4 (Dkt. Nos. 1-1, 1-2, 1-3, 1-4). The RNC also submitted a fifth request seeking text messages and BlackBerry Messenger messages sent to or by Secretary Clinton. Compl. Ex. 5 (Dkt. No. 1-5). In November 2015, the State Department sent five separate letters acknowledging each of the requests and assigning each a separate Case Control Number. Compl. Ex. 6 (Dkt. No. 1-6). That was the last that the RNC heard from the State Department until after the RNC filed this lawsuit.

When it became clear that the Government had ignored the RNC's FOIA requests, the RNC filed this suit on March 9, 2016, nearly five months after it first made the requests. Dkt. No. 1. After the State Department answered the Complaint, the parties negotiated to narrow the scope of the RNC's requests. When those negotiations concluded (just before the State Department filed its motion for summary judgment), the RNC's five FOIA requests had been narrowed as follows:

**Request 1—Cheryl Mills E-Mails:** The RNC originally sought "all e-mails sent to, or sent by, Cheryl Mills" from January 21, 2009 to October 31, 2013. *See* Compl. Ex. 1 (Dkt. No. 1-1); Def.'s MSJ Ex. 2 (Dkt. No. 19-3). On May 23, 2016, the RNC narrowed the Mills request by providing the State Department with three sets of search terms, each to be applied to a designated period. RNC's SMF ¶ 10; Kang Decl. ¶ 8 & Ex. D; Def.'s Ex. 14 (Dkt. No. 19-15) at 3–5. Those search terms focus on the Clinton email and server issues and other areas of controversy, as well as certain of Secretary Clinton's signature policy actions while at the State Department. In addition, the RNC agreed that the State Department could exclude any blast emails sent by OpsNewsTicker@state.gov and OpsAlert@state.gov. *Id.* Applying those May 23 search terms and

time restrictions, the State Department identified 64,000 emails responsive to the Mills request, which the State Department equates to 103,000 pages. Def.'s SMF ¶ 30; Stein Decl. ¶ 20.

**Request 2—Jacob Sullivan E-Mails:** The RNC originally sought "all e-mails sent to, or sent by, Jacob Sullivan" from January 21, 2009 to February 1, 2013. *See* Compl. Ex. 2 (Dkt. No. 1-2); Def.'s MSJ Ex. 3 (Dkt. No. 19-4). During negotiations, the RNC agreed that it would withdraw its request for Jacob Sullivan's emails. RNC's SMF ¶ 11; Kang Decl. ¶ 8 & Ex. D; Def.'s MSJ Ex. 15 (Dkt. No. 19-16); Stein Decl. ¶ 21; Def.'s SMF ¶ 27.[11]

**Request 3—Patrick Kennedy E-Mails:** The RNC originally sought "all e-mails sent to, or sent by, Patrick Kennedy" from January 21, 2009 to February 1, 2013, and from August 1, 2014 until the State Department received the RNC's FOIA request. *See* Compl. Ex. 3 (Dkt. No. 1-3); Def.'s MSJ Ex. 4 (Dkt. No. 19-5). On May 23, 2016, the RNC narrowed that request by providing the State Department with two sets of search terms for Patrick Kennedy's emails, the first to be applied during Secretary Clinton's tenure (January 21, 2009 to February 1, 2013), and a second, shorter list to be applied after August 1, 2014. RNC's SMF ¶ 10; Kang Decl. ¶ 8 & Ex. D; Def.'s Ex. 14 (Dkt. No. 19-15) at 2–3. As with the Mills request, the RNC excluded emails from OpsNewsTicker@state.gov and OpsAlert@state.gov. Applying those search terms, the State Department identified 11,000 emails responsive to the Kennedy request, which the State Department estimates to encompass around 19,000 pages. Def.'s SMF ¶ 30; Stein Decl. ¶ 19.

**Request 4—Bryan Pagliano E-Mails:** The RNC's FOIA request originally sought "all e-mails sent to, or sent by, Bryan Pagliano" from May 1, 2009 to February 1, 2013. *See* Compl. Ex. 4 (Dkt. No. 1-4); Def.'s MSJ Ex. 5 (Dkt. No. 19-6). The State Department initially told the RNC during an April 21, 2016 phone call that there were no responsive records for Mr. Pagliano. RNC's SMF ¶ 2; Kang Decl. ¶ 2. On May 10, 2016—after the press raised questions about Mr. Pagliano's

---

[11] If there was any doubt on that score, the RNC can confirm that it has withdrawn its request for Sullivan's records.

records[12]—the State Department reversed course and disclosed that it had found "some emails related to Mr. Pagliano." RNC's SMF ¶ 5; Kang Decl. ¶ 12 & Ex. C. Then later, on May 23, 2016, the State Department disclosed for the first time that, "[i]n a different context," it had compiled email accounts of "*other individuals* that *may* have been *reasonably likely* to have corresponded with *or about* Mr. Pagliano." RNC's SMF ¶ 12; Kang Decl. ¶ 13 & Ex. G; Def.'s Ex. 12 (Dkt. No. 19-13) (emphasis added); Stein Decl. ¶ 9. According to the State Department, that compilation contained approximately 392,000 emails. *Id.*

In a follow-up email, the RNC inquired whether the 392,000 Pagliano-related emails were all responsive to its request for emails sent or received by Pagliano. RNC's SMF ¶ 13; Kang Decl. ¶ 13 & Ex. G. The State Department again confirmed that the compiled Pagliano records are much broader than what the RNC had requested; they include all messages from individuals "who may have been reasonably likely to have corresponded with or about Mr. Pagliano," and thus contain emails "which would not be responsive" to the RNC's request. RNC's SMF ¶ 13; Kang Decl. ¶ 13 & Ex. G. To date, the State Department has not told the RNC how many of the 392,000 emails are responsive to the RNC's FOIA request, nor has it provided any other concrete information about those records. RNC's SMF ¶ 14; Kang Decl. ¶ 14.

**Request 5—Secretary Clinton Text Messages and BBM Messages:** The RNC originally sought "all text messages or Blackberry Messenger messages (BBMs) sent to, or sent by, Hillary Clinton" from May 1, 2009 to February 1, 2013. *See* Compl. Ex. 5 (Dkt. No. 1-5); Def.'s MSJ Ex. 6 (Dkt. No. 19-7). During an April 21, 2016 phone call, the State Department informed the RNC that it had searched but not located any responsive records. RNC's SMF ¶ 2; Kang Decl. ¶ 2. The RNC has not pressed the request further.

To summarize, the RNC has three outstanding FOIA requests, one each for Cheryl Mills, Patrick Kennedy, and Bryan Pagliano. As narrowed, the Mills request encompasses 64,000 emails,

---

[12] Josh Gerstein, *State Department Claims It Can't Find Any Clinton Texts or Email File for IT Aide*, Politico (May 9, 2016), http://www.politico.com/blogs/under-the-radar/2016/05/hillary-clinton-texts-bryan-pagliano-emails-222973.

the Kennedy request 11,000 emails; and the Pagliano request an unknown number of documents (because the Government has not disclosed how many are responsive). In a good-faith effort to expedite the State Department's productions on the other requests, the RNC withdrew its request for Jacob Sullivan documents in its entirety.

For the requests still at issue, the State Department has already determined whether the documents contain classified information. Early in the parties' negotiations—before the RNC withdrew its request for Mr. Sullivan's emails and further limited its requests for Ms. Mills's and Mr. Kennedy's emails—the State Department informed the RNC that "less than ten percent" of the documents sought include classified material. RNC's SMF ¶ 9; Kang Decl. ¶ 7 & Ex. C. At the time, the requests for Ms. Mills, Mr. Kennedy, and Mr. Sullivan totaled 450,000 pages; the page count for the now-narrowed requests is one-quarter of that amount, or approximately 120,000 pages, so the percentage of classified material may now be even lower. *Compare id. with* Def.'s SMF ¶ 30.

Despite that, the Government contends that producing the identified records "would impose an unreasonable burden on the agency." Def.'s Br. 2. According to the State Department, and as set out in its supporting declaration, it can "review records for releasability at a rate no faster than 500 pages per month." Stein Decl. ¶ 12; *see also id.* ¶¶ 19, 20; Def.'s Br. 4. Using the agency's figures, that is about 14 emails per work day.[13]

According to the agency, it must move at that snail's pace regardless of whether the responsive emails reveal classified material or contain only a one-line lunch order or YouTube forward. Indeed, the agency's supporting declaration concludes—without any analysis—that the review must proceed at a dawdling pace because Ms. Mills and Mr. Kennedy are high-ranking officials (Stein Decl. ¶ 12) and because the Department has other active FOIA cases. *Id.* ¶ 11. The State Department does not discuss whether it can expedite review by segregating classified

---

[13] The State Department claims it can review 500 *pages* (not documents) per month, which, applying the agency's estimate of 1.6 pages per email (*see* Stein Decl. ¶ 9 n.1), comes to 312.5 emails per month. 312.5 emails divided by 22 average calendar work days equals 14.2 emails per work day.

materials; does not explain why, for non-confidential materials, its reviewers can go no faster than two pages an hour; and does not explain why its reviewers are uniquely (indeed, historically) slow when compared to the average document reviewer.[14]

In addition to proposing a tortoise-like review, the Government uses an illusion to exaggerate the purported burden created by the RNC's requests. Both in its negotiations with the RNC and now in its briefing to this Court, the State Department repeatedly lumps together the RNC's requests to complain about the global challenges they impose. *See, e.g.*, Kang Decl. Ex. C (in an email sent by counsel for the State Department, suggesting that the combined requests for Ms. Mills, Mr. Kennedy, and Mr. Sullivan—before the Mills and Kennedy requests were further narrowed and the Sullivan request was withdrawn—encompassed 450,000 pages and would take 75 years to produce at 500 pages per month); Stein Decl. ¶ 14 (same); Def.'s Br. 4–5 (same).

## STANDARD OF REVIEW

Time and again, the Supreme Court has "noted [FOIA's] goal of broad disclosure." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989); *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7–8 (2001). "FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure." *Charles v. Office of Armed Forces Med. Exam'r*, 730 F. Supp. 2d 205, 211 (D.D.C. 2010).

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Inst. for Policy Studies v. C.I.A.*, 885 F. Supp. 2d 120, 132 (D.D.C. 2012). Summary judgment should be granted "against a party who . . . fails to make a showing sufficient to establish the

---

[14] *See* Chris Egan & Glen Homer, *Achieve Savings By Predicting and Controlling Total Discovery Cost*, The Metropolitan Corporate Counsel (Dec. 1, 2008), http://www.metrocorpcounsel.com/pdf/2008/December/08.pdf ("For a typical linear review, an industry-recognized standard is approximately 50 documents per hour, per reviewer. For a conceptual review product, our historical data shows an average of 200 documents per hour, per reviewer.").

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 132.

The State Department argues that it may withhold records responsive to the RNC's requests because producing them would impose an "unreasonable burden on the agency." Def.'s Br. 2. "It is the agency's burden . . . to 'provide sufficient explanation as to why [responding to a FOIA request] would be unreasonably burdensome." *Pinson v. U.S. Dep't of Justice*, 80 F. Supp. 3d 211, 216 (D.D.C. 2015) (quoting *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)). The Government has failed to carry that burden, so the RNC is entitled to summary judgment in its favor.

## ARGUMENT

James Madison said that "a popular government without popular information or the means of acquiring it is but a prologue to farce or tragedy or perhaps both." *See* U.S. Dep't of Justice, *Celebrating James Madison and the Freedom of Information Act* (Mar. 13, 2008) ("With Madison's views on the importance of an informed citizenry in mind, the occasion of James Madison's birthday is an excellent opportunity for federal agencies to review their FOIA operations to ensure that this vital government function is receiving the attention it deserves.").[15] In the American legal system, FOIA is one check against opacity in government. Congress enacted the statute "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976); *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011).

Of course, FOIA's effectiveness depends in large part on courts enforcing the statute's requirements. Here, that means ordering the State Department to produce the records that the RNC seeks. The RNC's requests—in addition to being potentially vital to ensuring an informed electorate this November—are modest in size and scope, and the Government's arguments to the

---

[15] https://www.justice.gov/oip/blog/foia-post-2008-celebrating-james-madison-and-freedom-information-act.

contrary have been met with public derision[16] and should enjoy no better reception in court. There is no basis in the record or the Government's supporting affidavit to credit the Government's outlandish claim that it would take the State Department decades to respond to the RNC's requests. *See King v. U.S. Dep't of Justice*, 830 F.2d 210, 223 (D.C. Cir. 1987) (in FOIA case, rejecting affidavit that was "wholly lacking in that specificity of description" that "is necessary to ensure meaningful review of an agency's claim to withhold information subject to a FOIA request").

## I.   THIS COURT MUST INDEPENDENTLY EVALUATE EACH OF THE RNC'S THREE OUTSTANDING FOIA REQUESTS.

Throughout its summary judgment brief, the Government invokes number after number— "1,000,000 pages" (Def.'s Br. 2), "decades" to process (*id.*), "22,000 pending FOIA requests" (*id.* at 3), "300% increase in FOIA requests" (*id.*), "1,500,000 pages of potentially responsive records" (*id.* at 4), "75 years in total" to produce (*id.* at 5), "392,000 documents, or approximately 627,000 pages" (*id.* at 6), "104 years to process." *Id.* The Government seems to hope that the barrage of numbers will overload this Court's senses, overwhelming it into thinking that the RNC's requests are unduly burdensome. The numbers are a parlor trick.

FOIA requires "each agency" to review and produce documents "upon *any request* for records." 5 U.S.C. § 552(a)(3)(A) (emphasis added). "[N]othing in the Act should be read to 'authorize withholding of information or limit the availability of records to the public, except as specifically stated . . . .'" *Rose*, 425 U.S. at 361 (quoting 5 U.S.C. § 552(d)). What that means is that an agency must review and respond to *each individual* request as it comes in (5 U.S.C. § 552(a)(3)(D) (agency must search for documents "responsive to *a request*" (emphasis added))); the agency may refuse to produce a record only if it falls within one of the statute's narrow exemptions. 5 U.S.C. § 552(d); *Milner*, 562 U.S. at 571 ("We have often noted [FOIA's] goal of

---

[16] Byron Tau, *Estimate of 75 Years to Release Clinton Aides' Email 'Not an Outlandish Estimation,'* Wall St. J. Blog (June 7, 2016), http://blogs.wsj.com/washwire/2016/06/07/estimate-of-75-years-to-process-clinton-aides-email-not-an-outlandish-estimation.

broad disclosure and insisted that the exemptions be given a narrow compass." (internal quotation marks omitted)).

The State Department would have this Court ignore the statute's call for an independent review of each FOIA request in favor of an approach whereby the court would lump all the requests together and then would judge their reasonableness collectively. Recognizing that the aggregate is far more striking than the individual, the Government tries to blur the lines between the RNC's five (now three) FOIA requests to distort their scope. It does so by using cumulative page counts for the combined (and pre-narrowed) requests (Def.'s Br. 4) and repeatedly emphasizing the "total" number of years (purportedly) needed to process everything. *Id.* at 5; Stein Decl. ¶ 14. But those numbers are not accurate: Even accepting the Government's unsupported suggestion that its FOIA reviewers can clear no more than two pages an hour, the decades-to-process position still factors in troves of records that the RNC is no longer seeking—including all of Sullivan's emails and emails for the Kennedy and Mills requests that have been eliminated through narrowed search criteria.

But putting that aside for a moment, it is fundamentally incorrect that the Court can look to the aggregate burden created by multiple requests in determining whether the Government is obliged to respond. "If the requests are indeed separate"—and the RNC's are—then the court's analysis of one should "have no impact on the others." *Banks v. Dep't of Justice*, 605 F. Supp. 2d 131, 142 (D.D.C. 2009). "[E]ach FOIA request must be evaluated independently . . . ." *Gulf Oil Corp. v. Brock*, 778 F.2d 834, 841 (D.C. Cir. 1985) (describing interrelationship between FOIA and the Trade Secrets Act).

The RNC filed five separate FOIA requests consolidated in one lawsuit. Two of those requests—Request 2 for Jacob Sullivan's emails and Request 5 for Secretary Clinton's mobile device messages—are now off the table. This Court must evaluate each of the three remaining requests—for Kennedy, Mills, and Pagliano emails—independently. Those (now-narrowed) requests are reasonable on their face, and the Government has provided no credible basis for denying or delaying production.

## II.    THE RNC'S REMAINING REQUESTS ARE REASONABLE.

Given the barrage of numbers in the Government's brief, it would be easy to lose sight of what is really at issue in this litigation. Through a series of negotiations with the State Department, the RNC narrowed its FOIA requests. It now maintains three active requests, each seeking a subset of emails from three separate custodians (Mr. Kennedy, Ms. Mills, and Mr. Pagliano). For Patrick Kennedy, the RNC seeks just 11,000 emails totaling approximately 19,000 pages. *See* Stein Decl. ¶ 19; Def.'s SMF ¶ 30. For Cheryl Mills, the RNC seeks 64,000 emails totaling approximately 103,000 pages. *See* Stein Decl. ¶ 20; Def.'s SMF ¶ 30.

And then there is the request for Bryan Pagliano. Apparently lacking a repository for Mr. Pagliano's emails, the Government has compiled emails for all individuals who "*may* have been *reasonably likely* to have corresponded with *or about* Mr. Pagliano." RNC's SMF ¶ 12; Kang Decl. ¶ 13 & Ex. G; Def.'s Ex. 12 (Dkt. No. 19-13) (emphasis added). It is simply not plausible that the United States Government lacks the technological capacity to determine how many of those emails were *sent or received by* Mr. Pagliano, the plain language of the RNC's request which the State Department has had in its possession since last November. Regardless, the Government still has not told the RNC or this Court how many Pagliano records are responsive to the RNC's request. RNC's SMF ¶ 14; Kang Decl. ¶ 14. Because the Government has not reasonably identified the universe of material responsive to the Pagliano request, the RNC is *per se* entitled to summary judgment on that request. At the very least, the Government is *per se* not entitled to summary judgment on that request. *See Pinson*, 80 F. Supp. 3d at 216 (D.D.C. 2015) ("It is the agency's burden . . . to 'provide sufficient explanation as to why [responding to a FOIA request] would be unreasonably burdensome.'"). The Government's request for summary judgment must be denied for Mr. Pagliano's records.

But the Pagliano request is not the only one where the State Department fails to carry its burden; the Government's arguments about processing burdens are equally unfounded for Ms. Mills and Mr. Kennedy. In support of its claims about unreasonable burdens, the State Department

offers nothing but a conclusory declaration (more on that later) and its own just-trust-me assurances. But the fact is, the RNC's requests are miniscule compared to what the Government routinely demands from private parties in civil and criminal litigation. The Government is doing nothing more than stalling.

The cases that the Government cites do not compel a different conclusion. For instance, the State Department relies on *American Federation of Government Employees, Local 2782 (AFGE) v. U.S. Department of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990), for the sweeping proposition that an agency "need not comply with a FOIA request that would 'require the agency to locate, review, redact, and arrange for inspection a vast quantity of material.'" Def.'s Br. 2; *see also id.* at 7, 8 n.2, 9. The Government misapplies *AFGE*: The decision certainly does not stand for the proposition that an agency can shirk FOIA's requirements whenever a request requires an expansive review; if it did, the FOIA statute would have ceased to have meaning upon the dawning of the email age. Beyond that, *AFGE*'s facts are not comparable to this case. There, the Court held that a FOIA request was unreasonably burdensome because it sought inspection of literally "every chronological office file and correspondent file, internal and external, for every branch office, staff office, assistant division chief office, division chief office, assistant director's office, deputy director's office, and director's office" of the Census Bureau. *AFGE*, 907 F.2d at 205, 208–09. In other words, the requester wanted to look at every single office file for every single employee in every single office for an entire governmental agency. That, of course, is a far cry from a request for a subset of emails from a single employee, particularly when the request has been narrowed by search terms and date limitations.

The other cases cited by the State Department are just as inapposite. Consider *Vietnam Veterans of America Connecticut Greater Hartford Chapter 120 v. Department of Homeland Security*, 8 F. Supp. 3d 188 (D. Conn. 2014), cited on pages 7 and 9 of the Government's brief. There, the court analyzed a request for between 26,000 and 31,000 50-page separation packets from the Army, Navy, and other branches of the military. That single request encompassed more

than 1.3 million pages of material, and nearly every page contained personally identifying information that had to be redacted before release. *Id.* at 203.

The RNC's requests are nothing like that. Take the RNC's request for Patrick Kennedy's emails: According to the State Department, there are only 11,000 responsive emails, totaling approximately 19,000 pages (Def.'s SMF ¶ 30; Stein Decl. ¶ 19), and it has admitted that the overwhelming majority of those messages contain non-sensitive information that can be released without redaction.[17] RNC's SMF ¶ 9; Kang Decl. ¶ 7 & Ex. C. The same applies for the 103,000 pages of Cheryl Mills records. There are no legitimate grounds for the State Department to withhold non-exempted emails. *See* 5 U.S.C. § 552(a)(3)(A); *id.* § 552(d) (records can be withheld only "as specifically stated" in the statute).

Similar distinctions can be drawn for each of the Government's remaining cases, and not just because none discusses the burden of *producing* (as opposed to *searching* for) readily identifiable materials:

- In *Hainey v. U.S. Department of the Interior*, 925 F. Supp. 2d 34, 45 (D.D.C. 2013), the FOIA request would have required a search of "every email sent or received by 25 different employees" just to locate responsive material.

- The FOIA request in *International Counsel Bureau v. U.S. Department of Defense*, 723 F. Supp. 2d 54 (D.D.C. 2010) would have required a manual review of hundreds of thousands of video and still images to identify responsive material, all by people "familiar with the images of the detainees," and the government's affidavit in the case indicated that the materials were in a digital format on inaccessible drives and would have to be recovered and reloaded. *See Int'l Counsel Bureau v. U.S. Dep't of Defense*, No. 08-cv-1063 (D.D.C.), ECF 41-2 at ¶ 5.

- In *Wolf v. C.I.A.*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008), the court held that the CIA had already performed a reasonably calculated *search* and did not need to review 1940s-era unsorted microfilm files to search for responsive records.

---

[17] It is not surprising that Patrick Kennedy's or Bryan Pagliano's emails contain very little classified material considering that the State Department classified less than five percent of the 50,000 plus emails recovered from Secretary Clinton. *See* Josh Gerstein & Rachael Bade, *State Dept. Releases Final Haul of Clinton Emails*, Politico (Feb. 29, 2016), http://www.politico.com/story/2016/02/hillary-clinton-emails-top-secret-219988.

We could go on, but this is not principally about discrediting the Government's cases. What is most important is that the RNC's three remaining FOIA requests are reasonable by any measure. Each "reasonably describes" the records sought (5 U.S.C. § 552(a)(3)(A)), and the Government has had no difficulty identifying those records. It is only because the RNC's requests leave no doubt about the universe of responsive material that the State Department now argues about "processing burdens."

Regardless, the Government's claims about processing burdens are just another stall tactic. The RNC is not trying to expose State secrets; it has no interest in agency records that will jeopardize foreign diplomatic relations or put American lives at risk. The RNC's requests have a much different aim: to educate the American people about the character and fitness of a presumptive presidential nominee through the illuminating lens of her actions while Secretary of State. Secretary Clinton has written a 500-page book defining on her own terms her tenure at the State Department (*see* Hillary Rodham Clinton, *Hard Choices* (2015)), and yet critical questions remain about how she conducted herself in that high office. For instance, the revelations about Secretary Clinton's private email server have raised serious questions about whether she knowingly, and with her staff's knowledge or consent, violated federal law. And even more, the State Department Inspector General's Report suggests that she may have done so in part to evade FOIA scrutiny. *See* IG Rep. at 38–39. Before November comes, the American people deserve to know, to the greatest extent possible, the uncensored truth about Secretary Clinton's time at the State Department. The RNC carefully calibrated its search terms to capture records that will provide those important answers.

## III.   THE STATE DEPARTMENT'S SUPPORTING DECLARATION DOES NOT SUPPORT THE GOVERNMENT'S CLAIM THAT THE RNC'S REQUESTS ARE UNDULY BURDENSOME.

The numbers game that the Government plays in its summary judgment brief extends to the State Department's supporting declaration. The agency packs its declaration with numbers and figures hoping to lull the Court into believing that the Government's claim about processing

burdens is more than posturing. It is not. The Government's declaration is a smokescreen—and not a very good one at that.

The critical issue in this litigation is not how many documents (or pages) come within the RNC's requests. The central question is twofold: First, can the State Department reasonably identify the records that the RNC seeks (it admits that it can), and second, can the State Department process and produce those records without unduly burdening government operations. On the latter question, the Government's declaration provides nothing but "vague and sweeping" conclusions (*King*, 830 F.2d at 219) that the agency can process documents "at a rate no faster than 500 pages per month." Stein Decl. ¶ 12. The Government provides no detail—*none*—to support that claim.

The law in this Circuit is clear: "[A]ffidavits cannot support summary judgment if they are 'conclusory, merely reciting statutory standards, or if they are too vague or sweeping.'" *King*, 830 F.2d at 219. An agency's affidavit must contain "sufficient information" and be "reasonably detailed" about the reasons why the Government cannot comply with FOIA's mandate. *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). "Conclusory statements . . . are insufficient to support summary judgment." *Id.* (reversing order granting summary judgment for the government because the agency did not submit "sufficiently detailed affidavits to allow [the Court] to review the adequacy of [its] search"); *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980) ("To justify [confidence in agency affidavit] . . . , supporting affidavits must be 'relatively detailed' and nonconclusory and must be submitted in good faith." (citation omitted)); *see also Cuban v. S.E.C.*, 795 F. Supp. 2d 43, 51 (D.D.C. 2011).

The Government's declaration fails those standards. In a single sentence, the Agency's declarant (Eric Stein) "estimate[s] that the Department [can] review records for releasability at a rate no faster than 500 pages per month." Stein Decl. ¶ 12. Then, assuming that piddling pace, Stein calculates how long it will take the Agency to process each of the RNC's requests. When he finally reaches the requests that remain at issue in the litigation—paragraphs 13 through 18 discuss requests that have since been narrowed or dropped—Stein concludes that it will take "38 months, or 3 years" to process Patrick Kennedy's emails (Stein Decl. ¶ 19) and "206 months, or 17 years"

for Cheryl Mills. *Id.* ¶ 20. His calculation for Mr. Pagliano (an astonishing 104 years) is of no value because it does not address how many of the Pagliano documents are actually responsive to the RNC's request. *Id.* ¶ 22.

The overarching problem is that the cornerstone for all those numbers—for the entire declaration, really—is the Government's estimate that it can process only 500 pages per month. But for that figure, the declaration provides no analysis, no facts, no foundation to explain how the Government arrived at that number. It "has done no more than baldly assert" (*Davenport v. C.I.R.*, No. 85 C 8612, 1986 WL 8965, at *2 (N.D. Ill. Aug. 13, 1986)) that two of the custodians (Ms. Mills and Mr. Kennedy) "are or were some of the highest-ranking officials of the Department" and that "the Department [has] current commitments to FOIA plaintiffs" in other cases. Stein Decl. ¶ 12. That, of course, is no explanation for the Government's purported calculations.

The Government has not disclosed, for example, how quickly its reviewers move in a typical review, nor does it explain what is so unique about this case that will bog the process down to two pages per hour. The Government also fails to acknowledge that most of the documents in question are non-classified (Kang Decl. Ex. C) and does not discuss the possibility of segregating non-classified and plainly releasable materials for immediate or rolling production. As best we can tell, the Government pulled the 500-pages-per-month figure out of thin air. The Government's declaration "is, in a word, inadequate—wholly lacking in that specificity of description [that courts in this Circuit have] repeatedly warned is necessary to ensure meaningful review of an agency's claim to withhold information subject to a FOIA request." *King*, 830 F.2d at 223; *see also Weisberg*, 627 F.2d at 370 (finding insufficient an agency affidavit that "[did] not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized").

"FOIA was 'conceived in a spirit of skepticism towards facile claims of the need for complete government secrecy.'" *Davenport*, 1986 WL 8965, at *2. The Government's declaration gives credence to that skepticism. It contains nothing more than "[c]onclusory statements" (*Nation Magazine*, 71 F.3d at 890) that are "woefully lacking of the detail necessary for the Court to assess" the Agency's claims. *Cuban*, 795 F. Supp. 2d at 51.

## **CONCLUSION**

There are FOIA requests, and then there are FOIA requests. A citizen curious about the brand of pencils that the State Department orders is entitled to submit a FOIA request asking for those records, but transparency about such lesser matters is not a "structural necessity in a real democracy." *Favish*, 541 U.S. at 172. At the far opposite end of the spectrum lies the RNC's requests. They go to the heart of one of the most serious matters in our democracy: a presidential candidate's fitness to serve in the Oval Office. Accountability to the public on that question—before Election Day—is indeed a structural necessity in our Country.

This case is not about "burdens" or "capacity" or "overbroad requests." It is about one government agency's efforts to keep information from public view long enough to prevent it from influencing the coming election. It is here that FOIA serves its "basic purpose"—to "ensure an informed citizenry, vital to the functioning of a democratic society" has a "check against corruption" and the ability "to hold the governors accountable to the governed." *See Robbins Tire*, 437 U.S. at 242.

For all those reasons, this Court should deny the Government's motion for summary judgment and should grant the RNC's cross-motion for summary judgment.

Respectfully submitted June 20, 2016.

/s/ Edward T. Kang                        /s/ Brian D. Boone

| | |
|---|---|
| Edward T. Kang (D.C. Bar 1011251) | Brian D. Boone (D.C. Bar No. 987633) |
| edward.kang@alston.com | brian.boone@alston.com |
| Kelley Barnaby (D.C. Bar. No. 998757) | D. Andrew Hatchett (D.D.C. Bar No. GA0004) |
| kelley.barnaby@alston.com | andrew.hatchett@alston.com |
| ALSTON & BIRD LLP | ALSTON & BIRD LLP |
| 950 F. Street, NW | 101 S. Tryon Street |
| Washington, DC 20004 | Charlotte, NC 28280 |
| Telephone: (202) 239-3300 | Telephone: (704) 444-1000 |

John R. Phillippe
jphillippe@gop.com
REPUBLICAN NATIONAL COMMITTEE
310 First Street, SE
Washington, DC 20003
Telephone: (202) 863-8638

*Counsel for Plaintiff Republican National Committee*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

REPUBLICAN NATIONAL COMMITTEE,

　　　　Plaintiff,

　　　　v.

U.S. DEPARTMENT OF STATE,

　　　　Defendants.

Case No. 1:16-CV-461 (ABJ)

**THE REPUBLICAN NATIONAL COMMITTEE'S**
**STATEMENT OF GENUINE ISSUES OF MATERIAL FACTS AND**
**ADDITIONAL STATEMENT OF FACTS**

1)　**Undisputed.**

2)　**Undisputed but Incomplete.** The full text of the request is contained in Ex. 2 to the Government's Statement of Material Facts.

3)　**Undisputed but Incomplete.** The full text of the request is contained in Ex. 3 to the Government's Statement of Material Facts.

4)　**Undisputed but Incomplete.** The full text of the request is contained in Ex. 4 to the Government's Statement of Material Facts.

5)　**Undisputed but Incomplete.** The full text of the request is contained in Ex. 5 to the Government's Statement of Material Facts.

6)　**Undisputed but Incomplete.** The full text of the request is contained in Ex. 6 to the Government's Statement of Material Facts.

7)　**Undisputed.**

8)　**Undisputed.**

9)      **Undisputed.**

10)     **Disputed.** During an April 21, 2016 telephone conference, Attorney Justin

Sandberg (counsel for the State Department) advised Edward Kang (counsel for the

RNC) that the State Department had identified approximately 103,000 emails for

Cheryl Mills. *See* June 20, 2016 Declaration of Edward T. Kang ("Kang Decl.") ¶

2.

      The number of emails responsive to the Mills request has changed over time

as the RNC has provided additional search terms to narrow the scope of its request.

According to the Government's representations, which the RNC cannot

independently verify, the number of responsive documents now stands at 64,000.

Def.'s Statement of Material Facts ("SMF") ¶ 30; Stein Decl. (Dkt. 19-2) ¶ 20.

11)     **Disputed.** During an April 21, 2016 telephone conference, Attorney Sandberg

advised Attorney Kang that the State Department had identified approximately

463,000 emails responsive to the Sullivan request. Kang Decl. ¶ 2.

      The number of documents responsive to the Sullivan request changed over

time as the parties negotiated additional limitations. *See* Def.'s SMF ¶¶ 19, 21, 24,

27. On May 23, 2016, the RNC withdrew its FOIA request for Jacob Sullivan in a

good faith compromise to expedite the Government's production on the RNC's

other requests. Kang Decl. ¶ 8 & Ex. D; Def.'s MSJ Ex. 15 (Dkt. 19-16); Stein

Decl. ¶ 21; Def.'s SMF ¶ 27.

12)     **Disputed.** During an April 21, 2016 telephone conference, Attorney Sandberg

advised Attorney Kang that the State Department had identified approximately

77,000 emails responsive to the Patrick Kennedy request. Kang Decl. ¶ 2.

The number of responsive emails for the Kennedy request has changed over time as the RNC has provided additional search terms to narrow the request's scope. According to the Government's representations, which the RNC cannot independently verify, the number of responsive documents now stands at 11,000. Def.'s SMF ¶ 30; Stein Decl. ¶ 19.

13) **Disputed in part**. The RNC has no way to independently verify whether the State Department has "a single, unitary collection of emails sent and received by Mr. Pagliano during the relevant time period." Def.'s SMF ¶ 13. During an April 21, 2016 telephone conference, Attorney Sandberg advised Attorney Kang that the agency had not identified any emails responsive to the Pagliano request. Kang Decl. ¶ 2. Later, on May 10, Attorney Sandberg said that the agency had found "some emails related to Mr. Pagliano." Kang Decl. ¶ 12 & Ex. C. Then, on May 23, the State Department disclosed that, "[i]n a different context," it had compiled email accounts of "*other individuals* that *may* have been *reasonably likely* to have corresponded with *or about* Mr. Pagliano," and the total number of emails in that collection was 392,000, totaling approximately 627,000 pages. Kang Decl. ¶ 13 & Ex. G (emphasis added). The RNC believes that the State Department has the technical ability to determine how many of those emails are in fact responsive to its request—that is, how many were either sent or received by Mr. Pagliano—but the State Department has not yet provided that number. Kang Decl. ¶ 14.

14) **Disputed in part**. As stated in responses 10 through 13, the RNC disputes the State Department's estimation of the total number of e-mails responsive to the RNC's requests.

In addition, the RNC rejects as a point of law the State Department's aggregation of responsive records for the RNC's separate FOIA requests for Ms. Mills, Mr. Kennedy, Mr. Sullivan, and Mr. Pagliano in the aggregate; those requests must be analyzed independently. *See* RNC Br. 13–14; *Banks v. Dep't of Justice*, 605 F. Supp. 2d 131, 142 (D.D.C. 2009) ("If the requests are indeed separate," then analysis of one will "have no impact on the others.").

The RNC lacks sufficient knowledge to assess the truth of the State Department's claim that the agency cannot accurately count how many pages are responsive to the RNC's requests.

15) **Disputed.** The RNC lacks sufficient knowledge to assess the veracity of the State Department's claims about its FOIA workload and the year-over-year increase in FOIA requests directed at the agency.

16) **Disputed in part.** The RNC disputes that the Kennedy, Sullivan, and Mills requests are "complex." Each request "reasonably describes" the records sought (5 U.S.C. §552(a)(3)(A)), and the Government has had no difficulty identifying those records. Further, in prior communications with the RNC, the State Department has acknowledged that only a small fraction of the Kennedy, Mills, and Sullivan documents contain classified information. *See* Kang Decl. ¶ 7 & Ex. C.

17) **Disputed.** The RNC disputes on several grounds the State Department's claim that it will take 250 years to process the RNC's requests for the Mills, Sullivan, Kennedy, and Pagliano emails:

First, that estimation assumes that the State Department can review records at a rate no faster than 500 *pages* per *month*" (Stein Decl. ¶ 12 (emphasis added)),

an absurd figure considering that the industry-standard for document reviewers is at least 400 *documents* per reviewer *per day*. *See* David Degnan, *Accounting for the Costs of Electronic Discovery*, 12 Minn. J.L. Sci. & Tech. 151, 165 (2011) ("Industry standards suggest that document reviewers can read, understand, and mark 50 *documents* [not pages] *per hour* or 400 *documents per day*." (emphasis added)); *see also* Chris Egan & Glen Homer, *Achieve Savings By Predicting And Controlling Total Discovery Cost*, The Metro Corp. Counsel (Dec. 1, 2008), http://www.metrocorpcounsel.com/pdf/2008/December/08.pdf ("For a typical linear review, an industry-recognized standard is approximately 50 documents per hour, per reviewer. For a conceptual review product, our historical data shows an average of 200 documents per hour, per reviewer.").

Second, the 250-years-to-process estimation is based on wildly inaccurate numbers. It assumes the RNC's request covers 924,000 documents, when in fact the number is closer to 75,000 documents: 64,000 documents for Mills (Def.'s SMF ¶ 30; Stein Decl. ¶ 20), and 11,000 documents for Kennedy (Def.'s SMF ¶ 30; Stein Decl. ¶ 20). It also includes a full 392,000 documents for Bryan Pagliano even though the Government admits that not all of those documents are responsive to the RNC's request. Kang Decl. ¶ 13 & Ex. G.

Third, the RNC again objects to the State Department's repeated attempt to view its requests in the aggregate rather than analyzing the actual number of documents at issue for each individual request. *See* Response ¶ 14.

18) **Undisputed.** The RNC does not dispute that the State Department has taken the position that the RNC's requests are unduly burdensome. The RNC, of course, disputes the merits of the State Department's contention.

19) **Undisputed.** The RNC does not dispute that it provided search terms for the Kennedy and Sullivan requests and otherwise narrowed those requests in a good-faith attempt to compromise with the Government. The RNC provided an initial set of limitations on May 8, 2016, and provided further limitations on May 23, 2016. Kang Decl. ¶¶ 5, 8 & Exs. B, D.

20) **Undisputed but Incomplete.** Paragraph 20 accurately describes the first set of search limitations provided by the RNC on May 8, 2016. The RNC provided additional search limitations for Kennedy emails on May 23, 2016. Kang Decl. ¶ 8 & Ex. D.

21) **Undisputed but Incomplete**. The RNC does not dispute that it provided a list of 43 search terms for Jacob Sullivan on May 8, 2016. In a good-faith effort to expedite the State Department's productions on the other requests, the RNC withdrew its request for Jacob Sullivan documents in its entirety on May 23, 2016. Kang Decl. ¶ 8 & Ex. D; Def.'s MSJ Ex. 15 (Dkt. 19-16); Stein Decl. ¶ 21; Def.'s SMF ¶ 27.

22) **Undisputed but Incomplete.** The State Department accurately describes the RNC's May 13, 2016 proposed limitations for Cheryl Mills emails. On May 23, 2016, the RNC provided additional limitations for the Mills requests, including three sets of search terms to be applied respectively to the periods January 21, 2009

to March 18, 2009, March 19, 2009 to January 11, 2010, and January 12, 2010 to February 2, 2013. Kang Decl. ¶ 8 & Ex. D; Def.'s Ex. 14 (Dkt. 19-15) at 3–5.

23) **Disputed.** The RNC does not know what the State Department means when it says that the agency lacks the technical "ability to alter the scope of the [RNC's] requests." As a general matter, the RNC believes the Government's technical abilities are more developed than the Government claims. But given its uncertainty about the Government's assertion in paragraph 23, and because it lacks general awareness about the Government's systems, the RNC cannot adequately assess the veracity of the Government's statement.

24) **Disputed in part.** The State Department claims in paragraph 24 that the RNC's "revised requests yielded 93,000 documents . . . potentially responsive to the Kennedy request." The State Department has never provided that number (93,000) to the RNC. After the RNC provided its initial set of search terms for the Kennedy emails, the State Department told the RNC that it had identified 95,000 (not 93,000 emails). Kang Decl. ¶ 7 & Ex. C. On May 23, 2016, the RNC provided additional search limitations for the Kennedy emails, reducing the Government's number of responsive emails to 11,000. Def.'s SMF ¶ 30; Stein Decl. ¶ 19.

The RNC does not dispute that on May 19, 2016, the State Department told the RNC that it had identified approximately 120,000 documents for Sullivan and 66,000 documents for Mills. Kang Decl. ¶ 7 & Ex. C. But those numbers have been reduced (or in the case of Sullivan, eliminated) based on continuing negotiations.

The RNC has no way to independently verify the accuracy of the Government's representations about the number of responsive documents for each of the RNC's independent requests.

25) **Disputed.** For many of the same reasons stated in Response 17, the RNC disputes the State Department's estimates for how long it would take to process the RNC's requests for Mills, Kennedy, and Sullivan emails. The State Department's estimates are again based on the agency's unfounded and implausible 500-pages-per-month review rate. They are also based on a pre-narrowed and no longer accurate estimate of records responsive to the RNC's requests. *See* Response ¶ 17.

26) **Undisputed.** The RNC does not dispute that the State Department has taken the position that the RNC's requests are unduly burdensome. The RNC, of course, disputes the merits of that position.

27) **Undisputed.**

28) **Undisputed.**

29) **Undisputed.**

30) **Disputed in part.** The RNC does not dispute that the State Department has represented that, based on its application of the RNC's most-recent search criteria, the agency has identified 11,000 emails responsive to the Kennedy request and 64,000 emails responsive to the Mills request. The RNC lacks the ability to independently verify the Government's estimates.

The RNC has reasonable doubts, and therefore disputes, the Government's calculation of the number of emails responsive to the narrowed Mills request. The RNC provided additional search-term limitations for the Mills emails on May 23,

2016. Before those search terms were provided, the State Department had represented that there were 66,000 documents responsive to the Mills request. After the May 23, 2016 search terms were provided and applied, the new number of responsive documents became 64,000 emails—a decrease of only 2,000 emails. It seems unlikely that a proper application of the RNC's search terms would reduce that document set by only three percent, but the RNC has no way to verify whether the search terms were accurately applied.

31) **Disputed in part.** The RNC does not dispute that is has not offered search terms for the Pagliano emails. But that is because the State Department has not yet told the RNC how many emails are actually responsive to the Pagliano request. Kang Decl. ¶¶ 13, 14. The State Department's 392,000-document estimate represents a collection of records that far exceeds—likely in the order of magnitudes—the RNC's request for Pagliano emails. *Id.* Until the State Department tells the RNC how many of those records are responsive, there is no use in providing search-term limitations. *Id.*

32) **Disputed.** For the reasons provided in Response to paragraphs 17 and 25, the RNC again disputes the State Department's estimate for how long it will take to process the RNC's requests for Mills, Kennedy, and Pagliano. The State Department's estimate for all three custodians is improperly based on its unfounded and implausible 500-pages-per-month estimated review pace. In addition, the estimate for Pagliano is not at all probative of the agency's burden regarding the RNC's requests because it assumes a review of an enormous swath of records that were not requested by the RNC.

33) **Undisputed.** Although the RNC has no way to independently verify the State Department's assertion that it conducted a search for Secretary Clinton's text and BlackBerry Messenger messages, the RNC does not dispute the Government's claim that it did.

34) **Undisputed.** The RNC lacks the ability to independently verify the truth of the Government's claim that it found no records responsive to the RNC's request for Secretary Clinton's mobile device messages, but it does not dispute the State Department's claim.

35) **Undisputed.** Although the RNC lacks the ability to verify some of the claims in paragraph 35, it does not dispute them.

### THE REPUBLICAN NATIONAL COMMITTEE'S SUPPLEMENTAL STATEMENT OF MATERIAL FACTS

1.   The RNC submitted five FOIA requests on October 29, 2015. Compl. Exs 1-5; Def.'s MSJ Exs. 2-6. The State Department acknowledged receipt of those requests in separate letters in November 2015. Compl. Ex. 6; Def.'s MSJ Ex. 7. The State Department did not again contact the RNC about its requests until after the RNC filed this lawsuit on March 9, 2016.

2.   On April 21, 2016, counsel for the State Department (Jason Sandberg) and counsel for the RNC (Edward Kang) held a phone conference to discuss the RNC's requests and the pending litigation. During that call, Attorney Sandberg provided the State Department's initial assessment about the number documents potentially responsive to the RNC's requests:

a.  Cheryl Mills: The State Department represented that it had identified approximately 103,000 emails responsive to the Mills request, of which approximately 36,000 were classified.

b.  Patrick Kennedy: The State Department represented that it had identified approximately 77,000 emails responsive to Kennedy request, of which approximately 7,000 were classified.

c.  Jacob Sullivan: The State Department represented that it had identified 463,000 emails responsive to the Sullivan request, of which approximately 20,000 were classified.

d.  Bryan Pagliano: The State Department represented that it had not found any emails responsive to the Pagliano request during the relevant time period.

e.  Secretary Clinton BlackBerry Messenger Messages (BBMs) and Text Messages: The State Department represented that it had not found any BBMs or text messages responsive to the Secretary Clinton request during the relevant time period.

Kang Decl. ¶ 2. All told, the Government's report indicated that it had identified approximately 643,000 responsive emails.

3.  During the April 21, 2016 telephone conference, the Government took the position that it would be unreasonably burdensome to produce all of the documents that it had identified. Kang Decl. ¶ 3.

4.  On May 2, 2016, the Government asked whether the RNC would provide search terms to potentially narrow the scope of the FOIA requests. Kang Decl. ¶ 4 & Ex. A.

11

5.     On May 6, 2016, the Government and RNC conferred about a possible joint motion to extend the time for filing a production schedule or dispositive motion. As part of its proposed edits to the Government's draft motion, the RNC communicated its understanding about the Government's position that no documents existed that were responsive to the Pagliano request. Kang Decl. ¶ 9 & Ex. E. The Government did not indicate at that time that the RNC's understanding was incorrect or that the State Department had identified (or was potentially able to identify) emails responsive to the Pagliano request. Kang Decl. ¶ 10 & Ex. F. On May 10, 2016, one day after several news outlets published articles about the State Department's representation that it could not identify any emails for Bryan Pagliano, the Government informed the RNC that it had found "some emails related to Mr. Pagliano." Kang Decl. ¶ 12 & Ex. C.

6.     On May 8, 2016, the RNC provided proposed search terms for the Kennedy and Sullivan FOIA requests. Kang Decl. ¶ 5 & Ex. B.

7.     On May 13, 2016, the RNC provided proposed limitations to narrow the number of responsive emails for the Mills request. Kang Decl. ¶ 6 & Ex. C.

8.     On May 18, 2016, the Government represented that, after applying the RNC's initial search limitations for Kennedy, Mills, and Sullivan, it had identified a total of 450,000 responsive emails. Kang Decl. ¶ 7 & Ex. C.

9.     On May 19, 2016, in response to a question posed by the RNC's counsel, the Government represented that less than ten percent of the estimated 450,000 responsive pages were classified. Kang Decl. ¶ 7 & Ex. C. In that same exchange, the Government broke down the 450,000 document estimate and represented that

120,000 of those emails belonged to Jacob Sullivan, 95,000 belonged to Patrick Kennedy, and 66,000 belonged to Cheryl Mills. *Id.*

10. On May 23, 2016, the RNC proposed additional search-term limitations for Patrick Kennedy and Cheryl Mills. Kang Decl. ¶ 8 & Ex. D. For Cheryl Mills, the RNC provided three lists of search terms, each to be applied to a designated period. For Patrick Kennedy, the RNC provided two sets of search terms, the first to be applied during Secretary Clinton's tenure (January 21, 2009 to February 1, 2013), and a second, shorter list to be applied after August 1, 2014. Additionally, the RNC informed the Government that it could exclude any blast emails sent by OpsNewsTicker@state.gov and OpsAlert@state.gov to Mills and Kennedy's emails. *Id.*

11. Along with its narrowed search terms for Mills and Kennedy, on May 23, 2016, the RNC proposed to withdraw its request for Jacob Sullivan's emails in its entirety without prejudice. Kang Decl. ¶ 8 & Ex. D.

12. On May 23, 2016, the Government disclosed for the first time that, "[i]n a different context," it had compiled email accounts of "*other individuals* that *may* have been *reasonably likely* to have corresponded with *or about* Mr. Pagliano." Kang Decl. ¶ 13 & Ex. G (emphasis added). According to the Government, that compilation contained approximately 392,000 emails, totaling approximately 627,000 pages. *Id.*

13. In response to a question posed by the RNC's counsel, on May 24, 2016, the Government confirmed that the 392,000 Pagliano documents included more than just emails "sent or received by Pagliano" (as requested by the RNC); instead, the Pagliano compilation included all messages from individuals "who may have been

reasonably likely to have corresponded with or about Mr. Pagliano," and thus contain emails "which would not be responsive" to the RNC's request. Kang Decl. ¶ 13 & Ex. G.

14.     The State Department has not informed the RNC how many of the 392,000 emails are responsive to the RNC's FOIA request. Kang Decl. ¶ 14.

Dated: June 20, 2016

/s/ Edward T. Kang
Edward T. Kang (D.C. Bar 1011251)
edward.kang@alston.com
Kelley Barnaby (D.C. Bar. No. 998757)
kelley.barnaby@alston.com
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Telephone: (202) 239-3300

John R. Phillippe
jphillippe@gop.com
REPUBLICAN NATIONAL COMMITTEE
310 First Street, SE
Washington, DC 20003
Telephone: (202) 863-8638

/s/ Brian D. Boone
Brian D. Boone (D.C. Bar No. 987633)
brian.boone@alston.com
D. Andrew Hatchett (D.D.C. Bar No. GA0004)
andrew.hatchett@alston.com
ALSTON & BIRD LLP
101 S. Tryon Street
Charlotte, NC 28280
Telephone: (704) 444-1000